# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE EX PARTE APPLICATION OF CARLTON MASTERS FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | ) ) ) ) ) ) ) | Misc. Action No. 18-007 (RBW) |

## MEMORANDUM OPINION

On January 18, 2018, Carlton Masters (the "applicant") filed Carlton Masters' Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("Application" or "Masters' App."), which requests that the Court "grant[] him leave to serve" two subpoenas, one on Bank of America, N.A. ("Bank of America") and one on Citibank, N.A. ("Citibank"), for the production of records that he represents are "necessary for the purpose of aiding a foreign proceeding pending before the High Court of Lagos State, Nigeria" (the "Nigerian proceeding"). Masters' App. at 1–2. Upon consideration of the filings submitted to the Court regarding the Application,[1] the Court concludes that it must deny the Application.

## I. BACKGROUND

The applicant is the founder and owner of GoodWorks International, LLC ("GoodWorks"), which is "an international consulting firm focused on Africa," Masters' Mem.

---

[1] In addition to the filing already identified, the Court also considered the following submissions in rendering its decision: (1) the applicant's Memorandum of Law in Support of the Ex Parte Application of Carlton Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("Masters' Mem."); (2) the Opposition to Carlton Masters' Ex Parte Application for an Order Pursuant to 2[8] U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("Okafor's Opp'n"); (3) the applicant's Reply to Opposition of Ugo Okafor to the Ex Parte Application of Carlton Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding ("Masters' Reply"); and (4) Carlton Masters' Response to Order to Show Cause Why His Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding Should Be Granted Ex Parte ("Show Cause Resp.").

at 1, that "wholly own[s]" a subsidiary in Nigeria called GWI Ventures, Nigeria, Ltd. ("GWI"), id. at 2. In 2004, GoodWorks maintained a bank account at Bank of America in Atlanta, Georgia (the "Bank of America account"), see id. at 1, and GWI maintained a bank account at Citibank Nigeria in Lagos, Nigeria (the "Citibank Nigeria account"), see id. at 2. The applicant asserts that

> [i]n about 2004, [he] decided that GWI should purchase a vacant piece of real estate in Lagos, Nigeria . . . and build a[n] . . . apartment building there[.] At that time, [Ugo] Okafor, a U[.]S[.] and Nigerian attorney, was in charge of the GWI office. Okafor was instructed by [the applicant] to make the purchase on behalf of GWI. To effect that purchase, [the applicant] wired $700,000 from the GoodWorks [Bank of America] account in Atlanta to the Citi[bank] account in Lagos belonging to GWI.
>
> The land was purchased and the apartments were constructed and rented, but instead of titling the property in the name of GWI as he was instructed, Okafor titled [it] in the name of [a business] of which Okafor was and is still the majority owner. Now, Okafor claims that he rightfully owns the apartments.

Id. Based on these events, the applicant initiated the Nigerian proceeding against Okafor and several other parties. See id. at 5; see also id., Attachment ("Att.") A (Declaration of Elizabeth Sandza (Jan. 18, 2018) ("Sandza Decl.")), Exhibit ("Ex.") 7 (Statement of Compliance with Pre-Action Protocol).

On January 18, 2018, the applicant filed his ex parte Application, see Masters' App. at 1, which seeks bank records that he asserts "are directly relevant to prove the rightful beneficial owner" of the land in Lagos, Nigeria (the "Lagos property"), Masters' Mem. at 3. From Bank of America, he seeks "[c]opies of all monthly statements in 2004 for the [Bank of America] account" and "[c]opies of any and all records showing and evidencing all wire transfers during 2004 from [the] Bank of America [a]ccount . . . to [the] Citibank Nigeria [account]" (the "Bank of America request"). Id. at 9. From Citibank, he seeks "[c]opies of all monthly statements in 2004 for the [Citibank Nigeria] account" and "[c]opies of any and all records showing and

2

evidencing all wire transfers during 2004 from [the] Bank of America [a]ccount . . . to [the] Citibank Nigeria [account]" (the "Citibank request"). Id. at 9–10.

On January 23, 2018, the Court ordered the applicant to show cause in writing "why the Court must consider his application on an ex parte basis," Min. Order (Jan. 23, 2018), to which the applicant timely responded, see generally Show Cause Resp. On February 7, 2018, Okafor filed an opposition to the Application, see generally Okafor's Opp'n, to which the applicant responded, see generally Masters' Reply.[2]

## II. DISCUSSION

As an initial matter, the Court finds it appropriate to consider the Application ex parte, i.e., without the participation of Bank of America and Citibank. The Court agrees with the applicant that district courts are generally authorized to review a § 1782 application on an ex parte basis, see Show Cause Resp. ¶ 3 (collecting cases); see also, e.g., Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."), and that as a general matter, ex parte review is "justified by the fact that the parties [from whom discovery is sought] will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it," In re Letter of Request from Supreme Ct. of Hong Kong, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) (citing In re Letters Rogatory from Tokyo

---

[2] Although Okafor, who is not a party to this proceeding, has neither sought to intervene in this matter nor sought the Court's leave to participate as amicus curiae, the Court nonetheless finds it appropriate to sua sponte permit Okafor to participate in this proceeding as amicus curiae. This Court has "broad discretion to permit [persons] to participate [in proceedings] as amici curiae," District of Columbia v. Potomac Elec. Power Co., 826 F. Supp. 2d 227, 237 (D.D.C. 2011), and the Court, "upon [its] own initiative," may grant a non-party leave to file an amicus brief, Local Civil Rule 7(o)(1). Here, the Court finds it appropriate to sua sponte grant Okafor leave to file his opposition as amicus curiae, nunc pro tunc, because Okafor's "position is not [ ] represented by a[ny] party" to this action and the arguments he raises in his opposition "are relevant to the disposition of the case." See Local Civil Rule 7(o)(2) (identifying factors that must be addressed in a motion for leave to file a brief as amicus curiae and that are thus relevant to the Court's determination of whether to grant leave). Therefore, the Court has considered Okafor's opposition in conducting its analysis of the Application.

Dist., 539 F.2d 1216, 1219 (9th Cir. 1976)). Although the applicant has failed to provide the Court with any specific reason why ex parte review is appropriate in this particular case, the Court finds that ex parte review is nonetheless appropriate because the Application does not appear to present complex issues that require the participation of Bank of America or Citibank to resolve. Cf. Order at 2, In re Application of Hulley Enters. Ltd., Misc. Action No. 17-1466 (BAH) (D.D.C. June 23, 2017), ECF No. 5 (denying a request for ex parte consideration of a § 1782 application in part because it was "particularly appropriate" to require the participation of a third party subpoena target "given that . . . privileged material may be at issue").

Having resolved the ex parte review issue, the Court next turns to the merits of the Application. Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a) (2016). "The [court's] order may be made . . . upon the application of any interested person and may direct that . . . the document or other thing be produced[.]" Id. Three conditions must exist to satisfy § 1782(a):

> (1) the person from whom discovery is sought must reside in or be found within the district; (2) the discovery must be for use in a proceeding before a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person.

In re Application of Leret, 51 F. Supp. 3d 66, 70 (D.D.C. 2014). However, even if the statutory requirements are satisfied, "a district court is not required to grant a § 1782(a) discovery application simply because it has authority to do so" under the statute. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004).

> Rather, the district court should exercise its discretion, informed by consideration of four factors identified by the Supreme Court in Intel: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as . . . when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the

> receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

In re Application of Hulley Enters. Ltd., Misc. Action No. 17-1466 (BAH), 2017 WL 3708028, at *3 (D.D.C. Aug. 18, 2017) (alteration in original) (quoting Intel Corp., 542 U.S. at 264–65).

It is clear to the Court, and Okafor does not dispute, see generally Okafor's Opp'n, that the Bank of America and Citibank requests satisfy the second and third statutory requirements of § 1782. As to the second requirement that "the discovery must be for use in a proceeding before a foreign or international tribunal," In re Application of Leret, 51 F. Supp. 3d at 70, "the burden imposed upon an applicant is de minimis," and only requires the applicant to show that the requested discovery "relates to claims and defenses [that the applicant] intend[s] to assert in good faith" in a foreign proceeding, In re Application of Veiga, 746 F. Supp. 2d 8, 18 (D.D.C. 2010). The applicant easily satisfies that burden here, as his requests seek bank records related to the transfer of money allegedly used to purchase the Lagos property, and therefore, directly concern the ownership of the property, which is at issue in the Nigerian proceeding. See Masters' Mem. at 7, 9–10. As to the third requirement that "the application must be made by a foreign or international tribunal or any interested person," In re Application of Leret, 51 F. Supp. 3d at 70, it is clear that the applicant, as a party to the Nigerian proceeding, qualifies as an "interested person" within the meaning of § 1782, see Intel Corp., 542 U.S. at 256 ("No doubt litigants [in a foreign proceeding] are included among, and may be the most common example of, the 'interested person[s]' who may invoke [§] 1782." (second alteration in original)).

However, the Court cannot conclude as easily that the applicant's requests satisfy the first statutory requirement, which is that Bank of America and Citibank "must reside in or be found within th[is D]istrict." In re Application of Leret, 51 F. Supp. 3d at 70. The applicant argues

5

that Bank of America and Citibank are "found" in this District because they each conduct "systemic and continuous business activity" here. See Masters' Mem. at 5; see also id. at 4 (asserting that Bank of America conducts "systemic banking business in this District"). Specifically, he asserts that Bank of America conducts business in the District "through its three branch locations, its private banking services of US Trust, and its brokerage services of Merrill Lynch." Id. at 4–5; see also Masters' App., Att. A (Sandza Decl.), Ex. 1 (Bank of America Financial Centers and ATMs Near Washington, D.C.); id., Att. A (Sandza Decl.), Ex. 2 (U.S. Trust Wealth Management Washington, D.C. Locations); id., Att. A (Sandza Decl.), Ex. 3 (The Group AG – Merrill Lynch in Washington, D.C.), and also as "an official sponsor of the Washington Redskins," Masters' Mem. at 5; see also Masters' App., Att. A (Sandza Decl.), Ex. 4 (Official Site of the Washington Redskins). He further asserts that Citibank conducts business in this District through its "[fifteen] branch bank locations." Masters' Mem. at 5; see also Masters' App., Att. A (Sandza Decl.), Ex. 5 (Citibank NA in District of Columbia Routing Number, Address, Swift Codes). Although Okafor raises no objection to the applicant's argument as to Citibank, he argues that the applicant has failed to establish that Bank of America is "found" in this District because Bank of America "is [not] incorporated or headquartered in Washington, D.C.," and Bank of America's "branch locations . . . are simply not enough to authorize use of § 1782 in this jurisdiction." Okafor's Opp'n at 4 (citing In re Godfrey, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007)). Okafor further argues that Bank of America's sponsorship of the Washington Redskins is irrelevant because "[t]he Washington Redskins neither reside in nor are found in Washington, D.C.: their stadium is located at FedEx field in [Maryland] and the team's corporate headquarters are located in [ ] Virginia." Id. at 4 (footnote omitted).

This Circuit has not addressed what is required to demonstrate that a corporate entity is "found" in a District for purposes of § 1782, and district courts here and in other districts appear to apply different tests. Although these courts, and one member of this Court, appear to agree that a corporation is "found" in a district where it is headquartered or incorporated, see, e.g., In re Application of Thai-Lao Lignite (Thailand) Co., 821 F. Supp. 2d 289, 294–95 & n.4 (D.D.C. 2011) (citing In re Godfrey, 526 F. Supp. 2d at 422), and also where it "undertakes systematic and continuous local activities," id. at 295 (quoting In re Inversiones y Gasolinera Petroleos Valenzuela S. de R.L., Misc. Action No. 08-20378, 2011 WL 181311, at *7 (S.D. Fla. Jan. 19, 2011)); see also In re Godfrey, 526 F. Supp. 2d at 422 (noting that the drafter of § 1782 has observed that "insofar as the word 'found' is applied to corporations, 'it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence'" (citation omitted)), they diverge as to what types of activities qualify as "systematic and continuous." Some courts have applied the test for establishing whether a court may exercise general personal jurisdiction over an entity, consistent with the Due Process Clause, which requires showing that a corporation has contacts with a forum that "are so 'continuous and systematic' as to render [it] essentially at home" in that forum. See, e.g., In re Application of Sargeant, 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017); see also In re Inversiones, 2011 WL 181311, at *8 (recognizing the "equivalence of the requirement of being 'found' in the jurisdiction for purposes of personal jurisdiction with respect to a civil lawsuit against the party and for purposes of [§] 1782"). By contrast, the Northern District of California has applied what appears to be a lower standard, concluding that a corporation is "found" in any district in which it maintains an office. See In re Ex Parte Application of Qualcomm Inc., 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (concluding that corporate entities were found in the district because they

7

maintained "in-district offices"); see also Super Vitaminas, S.A., Misc. Action No. 17-80125-SVK, 2017 WL 5571037, at *2 & n.1 (N.D. Cal. Nov. 20, 2017) (concluding that a corporate entity was found in the district because it "operate[d two] corporate sales offices" there); In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc., Misc. Action No. 16-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (concluding that a corporate entity was found in the district because it "maintain[ed] an office in th[e] district"). Notwithstanding these differences, one member of this Court has observed that even if being "found" for purposes of § 1782 is not the equivalent of being subject to general personal jurisdiction in this Court, "[a]t minimum, . . . [the two inquiries] overlap considerably." In re Application of Thai-Lao Lignite (Thailand) Co., 821 F. Supp. 2d at 294 n.4.

Here, the Court need not decide which test applies because the applicant's allegations do not satisfy either test.[3] It is clear that the alleged contacts with this District are not sufficient to establish that this Court has general personal jurisdiction over Bank of America or Citibank. A court may exercise general personal jurisdiction over a corporation only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state,'" Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)), and "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction," id. at 137 (alterations in original) (internal citations and quotation marks omitted). Applying this standard, the Southern District of New York held that "one branch office . . . does not render [a] [b]ank essentially at home" for

---

[3] The Court notes that the applicant appears to concede that the personal jurisdiction test is the applicable test. See Masters' Reply at 2 ("This Court has basically equated 'found in' with whether the court has personal jurisdiction over an entity." (citing In re Application of Thai-Lao Lignite (Thailand) Co., 821 F. Supp. 2d at 294 n.4)).

purposes of § 1782, see Austl. and N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd., Misc. Action No. 17-216 (VEC), 2017 WL 3841874, at *4 (S.D.N.Y. Sept. 1, 2017), and other courts have held outside of the § 1782 context that in-state branch offices and automatic teller machines ("ATMs") are insufficient to establish general personal jurisdiction over a bank, see Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (no general personal jurisdiction over a foreign bank that "ha[d] branch offices in the forum, but [wa]s incorporated and headquartered elsewhere"); see also Freedman v. Suntrust Banks, Inc., 139 F. Supp. 3d 271, 279 (D.D.C. 2015) (no general personal jurisdiction over bank and its wholly-owned subsidiary that were not incorporated or headquartered in this District despite the fact that the bank and its subsidiary "operate[d] numerous retail branches and ATMs[] and maintain[ed] a significant 'brick-and-mortar' presence" in the District). Indeed, courts have found the same type of contacts alleged by the applicant here—branch banking business and investment in district-affiliated organizations—to be insufficient to establish general personal jurisdiction over Bank of America in particular. See Namer v. Bank of Am., N.A., Civ. Action No. 15-3130, 2016 WL 1089352, at *4 (E.D. La. Mar. 21, 2016) (allegations that Bank of America "provid[ed] business loans . . . [and] home loan modifications to customers in Louisiana, and invest[ed] in the economy of Louisiana through philanthropy and volunteerism" were insufficient to establish general personal jurisdiction); see also U.S. Bank Nat'l Ass'n v. Bank of Am., N.A., Civ. Action No. 11-1492-TWP-DKL, 2015 WL 5971126, at *8 (S.D. Ind. Oct. 14, 2015) (rejecting as insufficient Bank of America's "substantial financial dealings in Indiana," including "maintaining ten Merrill Lynch offices, operating at the University of Notre Dame, . . . and holding $1.25 billion in deposits from account holders in its Indiana branches," observing that such contacts were "similar to the numerous other states in which Bank of America operates"). As another member of this Court

9

has explained, deeming such contacts sufficient for general personal jurisdiction would "render [a party] 'at home' in . . . 'presumably . . . every State in which [the party's] sales are sizeable,'" and "Daimler explicitly forecloses such an outcome . . . [because] a 'corporation that operates in many places can scarcely be deemed at home in all of them.'" Freedman, 139 F. Supp. 3d at 279–80 (quoting Daimler, 571 U.S. 139 n.20).[4]

Furthermore, the applicant's allegations would fail even under the less rigorous test applied by the Northern District of California. Although the contours of that test are unclear, the decisions applying it are distinguishable, as those decisions concluded that a corporation was "found" in the district where it maintained one or more offices. See In re Ex Parte Application of Qualcomm, 162 F. Supp. 3d at 1036 ("in-district offices"); see also Super Vitaminas, 2017 WL 5571037, at *2 ("corporate sales offices"); In re Ex Parte Application of TPK Touch Sols., 2016 WL 6804600, at *2 ("an office in th[e] district"). In the Court's view, such offices are distinct in character from the ubiquitous retail locations and ATMs alleged to be the banks' contacts with this District in this case. Furthermore, the Court cannot conclude that Bank of America's sponsorship of the Washington Redskins elevates its presence in this District to a level sufficient to satisfy a standard that, at a minimum, "overlap[s] considerably" with the general personal jurisdiction standard, In re Application of Thai-Lao Lignite (Thailand) Co., 821 F. Supp. 2d at 294 n.4, particularly since the facts presented to the Court demonstrate that only the Redskins' city name has an association with this District, see Okafor's Opp'n at 4 (noting that the Washington Redskins' "stadium is located at FedEx field in [Maryland] and the team's

---

[4] Nor has the applicant demonstrated that the Court could exercise specific personal jurisdiction over Bank of America or Citibank, as "[t]here is no nexus between [the banks' alleged] contacts and the subject matter of the discovery sought." Austl. and N.Z. Banking Grp., 2017 WL 3841874, at *5. The applicant has alleged no facts connecting the banks' District branch offices or ATMs with the 2014 wire transaction or to any other events underlying the applicant's claims in the Nigerian proceeding.

10

corporate headquarters are located in [ ] Virginia" (footnote omitted)).

Notably, the applicant cites to no case law, see Masters' Mem. at 4–5; see also Masters' Reply at 2–3, nor is the Court able to locate any, finding that a corporation's retail locations and a single corporate sponsorship (of an entity that does not even exist here) are sufficient to render a party "found" in a district for purposes of § 1782. The only case cited by the applicant as support for his position is In re Inversiones, which he asserts "had no difficulty finding that Exxon was 'found in' [a] district, even when equating the 'found in' standard with a personal jurisdiction standard because, although Exxon was not incorporated or headquartered in Florida, it engaged in systematic and continuous business activities there [by] selling its product at Exxon gasoline stations." Masters' Reply at 3 (citing 2011 WL 181311). However, the case does not support the applicant's position for two reasons. First, the magistrate judge in that case did not identify any of the Exxon contacts that she found sufficient to establish that Exxon was "found" in her district, only appearing to base her conclusion on "Exxon['s] . . . [failure to] contest the fact that it conducts systematic and continuous activities in this District such that, if it were sued as a defendant in an ordinary civil lawsuit, the Court would have personal jurisdiction over [it]." In re Inversiones, 2011 WL 181311, at *8. Second, even if the magistrate judge had concluded that the presence of Exxon's retail gas stations in the district was sufficient to establish that Exxon was "found" in her district for purposes of § 1782, she likely would not reach the same conclusion now, given that since that case was decided, the Supreme Court issued its decisions in Goodyear and Daimler, which imposed a stricter standard for finding general personal jurisdiction over a nonresident corporation. See, e.g., Farber v. Tennant Truck Lines, Inc., 84 F. Supp. 3d 421, 430 (E.D. Pa. 2015) (explaining that "[t]he [c]ourt would be remiss to follow . . . [pre-Goodyear and Daimler] cases[] [ ] in light of Goodyear and Daimler's 'essentially at home'

11

language and the overwhelming post-Daimler acknowledgement that Goodyear and Daimler restrict a state's ability to subject a nonresident corporation defendant to general personal jurisdiction").

In sum, the Court concludes that the applicant has failed to demonstrate that either Bank of America or Citibank is "found" in this District for the purpose of satisfying § 1782, and therefore, it must reject the Application on this ground. See Thai-Lao Lignite (Thailand) Co., 821 F. Supp. 2d at 294 (denying a § 1782 petition because the petitioners "failed to make a sufficient showing that any of the named or intended respondents reside[d] or c[ould] be found in this district"). Consequently, the Court need not address Okafor's additional arguments for why the Application must be denied. See Okafor's Opp'n at 3–5.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the applicant has failed to demonstrate that his Application satisfies the requirements of 28 U.S.C. § 1782(a), namely, the requirement that the entities from which discovery is sought must reside in or be found in this District. Consequently, the Court must deny the Application.

**SO ORDERED** this 25th day of May, 2018.

REGGIE B. WALTON<br>United States District Judge